UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DEVON MEDVETZ, | CASE NO. 1:19CV2610 |
| Plaintiff, | JUDGE JOHN R. ADAMS |
| vs. | |
| | **MEMORANDUM OF OPINION AND ORDER** |
| CUYAHOGA COUNTY, OH, et al. | |
| Defendants. | |

This matter appears before the Court on motions for summary judgment filed separately by Defendant Cuyahoga County and Defendant Benjamin Milton. Docs. 27 and 28. Plaintiff Devon Medvetz has opposed both motions, and both Defendants have replied in support. Upon review, both motions for summary judgment are GRANTED.

I.       FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Medvetz started her employment with the Cuyahoga County Sheriffs' Department in 2003-2004 and was responsible for assisting with the transportation of inmates. Around 2012, Medvetz's workstation, along with the workstations of several others, moved from the first floor to the third floor of the Sheriff's office. Following that move, Medvetz began to work on the same floor as Milton. At that time, and throughout his time with the Sheriff's office, Milton was responsible for inputting information regarding County inmates and providing reports about the inmate population. Because of the nature of their positions, Medvetz and Milton worked for different supervisors despite working on the same floor.

Almost immediately after Medvetz began working on the same floor as Milton, Milton began a campaign of sexual harassment.[1] Milton told Medvetz that "it was hot" when she wore high heels to work and requested that she send him pictures while wearing high heels. Milton also told Medvetz that she had "great tits." Milton also admitted that he would on occasion stand over Medvetz to get a better view of her chest. Further, Milton conceded that on a day when Medvetz was not feeling well, he told her, "You know what is good for that? A shot of Vitamin B in all three holes." On yet another occasion, when Milton believed that Medvetz would be relocating from her office, he told her that it would then be more difficult to walk up and "just tell her how great her tits looked." While Milton claimed to not have known the wrongfulness of his conduct *at the time* he was making these statements, he agreed that intentionally made his comments outside the hearing of other employees.

Medvetz endured Milton's consistent sexual harassment for years. However, in late September of 2016, Medvetz spoke with her union steward, Barbara Starey, about the harassment. Starey immediately accompanied Medvetz to the Human Resources office where they met with HR Manager Hadiya Butler and HR Generalist Emina Panuesku. At the conclusion of the meeting, Medvetz was given the option of filing a formal complaint. She chose this option and returned a formal complaint to the HR office on October 4, 2016. On October 6, 2016, Employee Relations Specialist Rodney Harris gave Medvetz a letter to notify her that a formal investigation into her complaint had been opened. The letter notified Medvetz that confidentiality could not be guaranteed during the investigation and informed her that retaliation of any form would not be

---

[1] While Milton does not concede that he made each and every comment alleged by Medvetz, he rarely actively denies his conduct. Instead, Milton routinely indicates that he simply does not remember whether he made certain comments.

tolerated. The letter also provided Medvetz with contact information for the EEOC and Ohio Civil Rights Commission.

Shortly after Medvetz reported the harassment and followed up with her formal complaint, Starey approached management and requested that Medvetz be moved from the third floor to eliminate any interactions with Milton while the investigation was pending. While Starey asserts that she believed she was acting at Medvetz's request, Medvetz denies ever requesting to be relocated. After Starey made the request, Medvetz was relocated to a first-floor area that was already occupied by Sheriff's deputies. Medvetz had access to a phone and computer at this new location and chose to bring her own printer from home to lessen the chance of interacting with Milton.

Soon after Medvetz relocated to the first floor, she heard a Sheriff's deputy, Mark Romar, loudly proclaim that her presence made him uncomfortable and that he felt her presence on the first floor was unnecessary. Feeling singled out or unwelcome, Medvetz again relayed her concerns to Starey. Starey again approached management, and Medvetz was relocated to a private office in the Sex Offenders Unit, also on the first floor. By mid-November, Medvetz had been relocated to her original office space on the third floor.

Meanwhile, two dates after Medvetz filed her formal complaint, the HR office had opened an investigation. Harris initiated the investigation by notifying Medvetz that it had commenced and informing Milton that he was the target of an investigation. Harris interviewed Medvetz to understand her allegations. He also spoke to two other female employees that Medvetz had identified. Both these employees asserted that they had also previously been the subject of Milton's misconduct. On November 2, 2016, Harris interviewed Milton. During that interview, Milton admitted to making several of the comments detailed by Medvetz.

Based upon his investigation, Harris drafted a four-page report that he finalized on November 14, 2016. Harris concluded that Medvetz's claims of harassment were substantiated by his investigation. Based upon the report, Milton was subjected to discipline and attended a pre-disciplinary conference on November 22, 2016. While Milton maintained that he believed his comments were made in a joking manner, the County found that a three-day suspension and mandatory counseling was the appropriate discipline for his misconduct. The County made this decision on December 22, 2016, and Milton did not challenge any form of the discipline.

On February 24, 2017, Medvetz resigned her position noting, "I no longer wanted to deal with this and work here, and I was really tired of dealing with people and this place." Medvetz admits that following the filing of her complaint, she could recall only two encounters with Milton. The first involved an email in which Milton informed Medvetz that he had given directions to a fellow co-worker who could not locate Medvetz office. During the second encounter, on October 19, 2016, Medvetz claims that Milton told her that he would miss her "big push pins." Medvetz believed that Milton was referring to her breasts, while Milton contends that he was referring to actual, decorative push pins that Medvetz used on her bulletin board.

Based upon the above, Medvetz filed suit against the County and Milton. Medvetz complaint contends that the Defendants violated her right to equal protection, engaged in gender discrimination, and retaliated against her for protected activity. Both Defendants independently moved for summary judgment, and Medvetz opposed both motions. The Court now resolves those motions.

## II.   LEGAL STANDARD OF REVIEW

A party seeking summary judgment must show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A

fact is material if it is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary burdens. *Id.* At 252. Further, on summary judgment, the inferences to be drawn from underlying facts must be viewed "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The pivotal question in deciding a motion for summary judgment is whether a reasonable fact finder *could* make a finding in favor of either party. *See Anderson* 477 U.S. at 250 ("The inquiry performed is the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.").

The initial burden of showing the absence of any "genuine issue" belongs to the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be resolved by a jury" or other fact-finder at trial. *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995). A party opposing summary judgment must show that there are facts genuinely in dispute and must do so by citing to the record. Fed.R.Civ.P. 56(c)(1)(a).

> There is no duty imposed upon the trial court to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1480 (6th Cir.1989). *See also InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir.1989), cert. denied, 494 U.S. 1091, 110 S.Ct. 1839, 108 L.Ed.2d 967 (1990) (district court not required to speculate on which portion of the record the non-moving party relies, nor is court obligated to "wade through" the record for specific facts). Dozens of other panels, many speaking in unpublished prisoner appeals, have dealt with the circumstance of a dispositive motion in want of a response and have consistently assumed without specific comment that a court's reliance on the facts advanced by the movant is proper and sufficient.

*Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992)

III.     **LEGAL ANALYSIS**

    **1. Hostile Work Environment Claim Against Cuyahoga County**

In conducting its review of this claim, the Court has been mindful of the Sixth Circuit's position espoused in *Blankenship v. Parke Care Centers, Inc.*, 123 F.3d 868 (6th Cir. 1997) as later explained:

> In granting defendant's motion for summary judgment, the district court applied the test enumerated in *Blankenship* for employer liability for coworker sexual harassment. To prevail on such a claim, a plaintiff must prove that: (1) she is a member of a protected class; (2) she was subject to unwelcomed sexual harassment; (3) the harassment was based on her sex; (4) the harassment unreasonably interfered with her work performance and created a hostile work environment; and (5) defendant knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action. The sexual harassment in *Blankenship* involved a coworker, and we noted that hostile work environment cases make a distinction between sexual harassment caused by supervisors and sexual harassment caused by coworkers. When dealing with allegations of coworker sexual harassment, the act of discrimination by the employer in such a case is not the harassment, but rather the inappropriate response to the charges of harassment.

*Mullins v. Goodyear Tire & Rubber Co.*, 291 F. App'x 744, 746 (6th Cir. 2008)(internal citations, quotations, and alterations omitted). The Circuit went on to clarify how this Court should evaluate the response of an employer once it learns of harassment:

> Once an employer is aware of and responds to charges of sexual harassment, though, mere negligence as to the content of the response cannot be enough to make the employer liable. When an employer responds with good-faith remedial action, we cannot say that the employer has itself committed an act of discrimination.... When an employer implements a remedy, it can be liable for sex discrimination in violation of Title VII only if that remedy exhibits such indifference as to indicate an attitude of permissiveness that amounts to discrimination.

*Blankenship*, 123 F.3d at 873. In other words, "when an employer responds to charges of coworker sexual harassment, the employer can be liable only if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829 (6th Cir. 1999)(quoting *Blankenship*, 123 F.3d at 872-73. "The

question is not whether other remedial actions should have been taken or whether the actions taken by the Defendant were those desired by the Plaintiff. Instead, the question is whether the Defendant encouraged harassment in the workplace or evidenced culpable indifference to it." *Starks v. West Meade Place, LLP*, No. 3:05-0442, 2006 WL 2827420, at *6 (M.D.Tenn. Sept. 28, 2006)

In this matter, the record supports a determination that Milton created a hostile work environment with his consistent, repeated, sexually charged comments directed at Medvetz's dress and physical appearance. However, there is no genuine issue of material fact surrounding the County's response. Upon receiving Medvetz's complaint, the County started a formal investigation within days. Moreover, while the investigation remained pending, the County engaged in good faith efforts to minimize or eliminate Medvetz's interactions with Milton. While Medvetz seems to suggest that the County should have relocated Milton while the investigation was pending instead of her, the law does not require a perfect response from the County. Rather, the County is legally required to respond reasonably to Medvetz's complaint.

Further, the record demonstrates that the County did a full and complete investigation that included interviews of Medvetz, Milton, and two additional employees that were identified by Medvetz. This investigation validated Medvetz's complaint and resulted in discipline against Milton. Moreover, while Medvetz seems to suggest that the County should have done *more* to limit her interactions with Milton during the investigation, the record contains only one instance of a questionable interaction with Milton while the investigation was pending. Based upon the record before the Court, there is no genuine issue of material fact that the County responded reasonably to Medvetz's complaint and is entitled to judgment on her claim of a hostile work environment.

The Court notes that Medvetz implies in portions of her opposition that the County should have known sooner about Milton's alleged harassment.  However, Medvetz cannot cite to any statement or action by Milton that was witnessed by others.  While she contends that Milton testified that the third floor had a "stripper like atmosphere" and that "everybody talked nasty up on the third flood," Medvetz has failed to highlight a single underlying factual event that would place the County on notice of *her* allegations earlier than the date she reported them.  As such, she has failed to raise a genuine issue of fact through this argument.

2. **Retaliation Claim Against the County**

To establish a prima facie case of retaliation under Title VII, Medvetz must demonstrate that: (1) she engaged in activity protected by Title VII; (2) the County knew that she engaged in the protected activity; (3) the County took an action that was "materially adverse" to Medvetz; and (4) a causal connection existed between the protected activity and the materially adverse action. *Weeks v. Michigan, Dep't of Cmty. Health*, 587 Fed. App'x. 850, 858 (6th Cir. 2014) (*citing Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014), rehearing denied (Apr. 2, 2014)).  In the context of a Title VII retaliation claim, courts have defined "materially adverse" as an action that is "harmful to the point that [it] might well dissuade a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citations omitted).  A materially adverse action does not include trivial harms, such as "petty slights or minor annoyances that often take place at work and that all employees experience." *Id.*

Medvetz's retaliation claim focuses upon the fact that she was relocated on multiple occasions while the investigation was pending against Milton and that other employees ostensibly treated her as thought she was one causing trouble.  The Court finds that as a matter of law,

Medvetz's temporary relocations do not constitute materially adverse actions. *See Cecil v. Louisville Water Co.*, 301 Fed. App'x 490, 51 (6th Cir. 2008)(finding that relocation of Plaintiff's desk was not a materially adverse action). While Medvetz appears to suggest that relocating her to the Sex Offenders Unit was somehow a deliberate choice to punish her, she has produced no evidence to counter that the County relocated her to a private office precisely to address her concerns over the way others were treating her after her complaint. Accordingly, there is nothing in the record to support that Medvetz was subjected to a materially adverse action. Her retaliation claim, therefore, fails as a matter of law.

### 3. Medvetz's Claim Against Milton

Medvetz's sole argument in her response to Milton's motion for summary judgment asserts that Milton should be found liable for aiding and abetting an unlawful employment practice pursuant to Ohio Revised Code. § 4112.02(J). As Medvetz has not presented any argument in opposition to the arguments related to her other claims in the complaint, she has abandoned those claims.

Moreover, because the Court has concluded that the County is entitled to judgment on each of Medvetz's claims, it follows that Milton cannot be found to secondarily liable for those claims. In other words, because the County did not engage in an unlawful activity, Milton, as a matter of law, cannot have aided and abetted an unlawful act. Milton, therefore, is entitled to summary judgment on the claims raised against him.

## IV. CONCLUSION

Reviewing the facts in the light most favorable to Medvetz, no genuine issue of dispute of material fact exists on any claim against Defendants. Therefore, Defendants are entitled to judgment as a matter of law, and their motion for summary judgment is GRANTED.

In closing, the Court would note that it is full agreement with Medvetz that "[n]o woman should ever have to walk into her place of employment wondering what crude and vile comment she will be told that day." Doc. 29 at 5. Milton's comments and actions were not only unprofessional, but deplorable. However, given the claims raised before this Court and the arguments pursued by Medvetz, a legal remedy is not available. Accordingly, this matter is hereby closed.

It is so ordered.


Date: April 12, 2023                                  /s/ John R. Adams
                                                      JUDGE JOHN R. ADAMS
                                                      UNITED STATES DISTRICT JUDGE